All right, we're going to go on to No. 14-1229, John W. Perotti v. Diane Quinones. And Ms. Stevens, come on up. Good morning. Good morning. May it please the Court, my name is Anna Stevens, and I appear today for Michigan State University College of Law's Civil Rights Clinic on behalf of the plaintiff, Mr. John Perotti, to request that his appeal for a new trial be granted on the basis that the district court abuses discretion and denied him the right to a fair trial, and it failed to consider requiring defendants to appear by videoconferencing for his trial as well. Your Honor, I would like to begin by stating that the plaintiff concedes the argument outlined in Part 1 of his amended appellate brief, which asserts that the district court abuses discretion in its denial of his writ of habeas corpus ante secundum on the basis that the plaintiff had a right to appear in person at trial for his case against the defendants. As such, today we will address the issue in Part 2 of our amended appellate brief, as well as our applied brief, which asserts that the district court abuses discretion by failing to consider requiring the defendants to appear by videoconferencing for his trial as well. Now, did Mr. Perotti ask Judge Magnus Stinson to consider as an option having all parties in witness participate by videoconference? And if he did not, how do we get passed this waiver, given that this was a civil and not a criminal proceeding? To answer your first question, he did not formally object to the defendants not appearing in person. However, he did not waive the issue to defendants appearing at trial based on Stone v. Morris, which held that it is not necessary for plaintiff inmates to enter a formal objection to a district court's sua sponte ruling at trial in order to preserve the issue under Rule 46. So he hadn't waived it, given that fact, even despite the fact that he hadn't objected. Accordingly, the specific issue on appeal is whether the district court abuses discretion when it denied Mr. Perotti's request to appear in person and required him to appear by videoconferencing, but not the defendants whom it permitted to be present in court for The determination of whether to permit a plaintiff inmate to appear in person for a civil trial rests squarely within the discretion of a district court, which, when exercising this discretion, must balance the prisoner's interest in being physically present for trial against the government's interest in maintaining his or her confinement. In this case, the lower court abuses discretion when it made its determination under the interests outlined in Stone v. Morris because it failed to consider any alternative arrangement for Mr. Perotti's trial appearance, for all parties' trial appearances, other than the one it had ordered, including the best available option of requiring videoconferencing for both parties' participation at trial, which would have been far more consistent with recent Seventh Circuit precedent in the 2005 case of Thornton v. Snyder. Now, of course, the defendants had their own interests in appearing in person. And, you know, unlike Mr. Perotti, they hadn't committed crimes that required their incarceration. And I really don't mean to be cavalier on that point. But why should a court force the defendants to give up their own rights to appear in person? If they would have required both parties to appear by videoconferencing, as we're requesting, it would have nonetheless respected their right to a fair trial under the Seventh Amendment and under Rule 43, as the district court has the discretion to effectuate whichever arrangement it sees fit. And because the plaintiff in this case was unfairly disadvantaged by being the only party to be present at trial by videoconferencing, as well as the fact that the court didn't even consider any alternate arrangement, these interests, we believe, should have been weighed as part of the Stone balancing test when it made its determination to deny his writ to appear. I agree with you that appearing by video is no substitute for appearing in person, however advanced the technology may be, but is there any real likelihood here that Mr. Perotti was concretely prejudiced? His case seems to have fallen apart on the merits during trial. Yes, however, aside from the merits of the case of the verdict, it is our position that the verdict was the result of an unfair trial where several discrepancies emerged between each party's respective ability to participate in courtroom proceedings that were absent in Thornton and could have been easily ameliorated by the district court had it at least considered requiring the use of videoconferencing technology for both parties' appearance. For one, Mr. Perotti could not see the judge, the jury, and the defendant simultaneously, nor at will throughout trial due to his line of vision being restricted to wherever the court decided to position the video camera, as well as the fact that the defendants were able to view Mr. Perotti and those within the courtroom much better than he could see them, given the disparities between the videoconferencing technology provided by the court to Mr. Perotti at his correctional facility in New Jersey, which consisted of a 16-inch video monitor, in contrast to the defendant's unencumbered ability to view and participate in trial proceedings by virtue of being present within the courtroom, as well as the 42-inch monitor that the court had provided to the defendants as well as everyone else within the courtroom. Furthermore, the circuit has recognized that the inherent disadvantages of videoconferencing technology for trial appearances are real, and most recently in Thornton v. Snyder, where it quoted the Fourth Circuit and noted that virtual reality is rarely a substitute for actual presence, even in an age of advancing technology, watching an event on the screen remains less than the complete equivalent of actually attending it in trial. But would you agree that she applied, that the judge applied, the correct legal standard, the correct legal framework, in deciding whether or not to secure his presence? I mean, she certainly considered each of the factors in Stone v. Morris. Indeed, we would actually speak to our first concession to the first part. We're not challenging necessarily the court's requirement not to have him in person. However, we are challenging the fact that the court did not even consider requiring any alternative arrangement to effectuate his appearance at trial, aside from the one it ultimately ordered, which under Thornton v. Snyder would have been required, like requiring both parties to appear at videoconferencing would have been the best arrangement, as it would have eliminated the unique disadvantages that were posed on him at trial, as the court had it within the resources and as such an arrangement had been available to the court at the time. Well, this returns to the question that Judge Rovner asked at the outset of your argument, which is on what authority is there any authority for the court's ability to punish one side? In other words, the defendants in this case, by imposing on them a restriction that they are not otherwise encumbered by in order to ameliorate the disadvantage to the plaintiff here that is inherent in his incarcerated status. Well, there's no specific case that speaks directly to that issue of where the one defendant would have been punished by appearing at trial. You mentioned something in Thornton that supports that, and I just don't see anything in that case that supports that argument. In Thornton, the issue on appeal was whether the district court abused its discretion when it did not allow a plaintiff inmate to appear in court for a multi-day civil trial where both parties participated by videoconferencing. And ultimately, the Seventh Circuit upheld this arrangement on appeal, noting that the district court in Thornton did not abuse its discretion because it employed the appropriate safeguards to ensure that both parties' right to fair trial was respected. So in that case, they had provided both parties with an equivalent videoconferencing technology, which the district court did not in this case, as well as the fact that the district court— But there's nothing that's mandatory about that. We're entirely in the domain of discretion here. There's no constitutional right that's implicated. Our position is that due to the fact that the district court improperly balanced the interests in Stone and did not require any other alternative arrangement than the one it had ordered, given what the other available options at the time that it did abuse its discretion, that he was denied his right. Like what other options? Well, they discussed, since the issue on appeal the district court certified, given the advances in video technology, they discussed having— well, they raised the issue of having the trial conducted at his correctional facility in New Jersey, which dismissed, as well as the fact that having a trial conducted by deposition is in Stone. However, they held that the videoconferencing was the best for him, his appearance, due to—as a technological advance. However, we—it is our position that the court did not properly consider this because it only considered the option of using videoconferencing for his appearance uniquely at trial, which— Would you be satisfied if his screen would have been one of those mega screens that you can buy at Best Buy? Like in stadiums? Actually, well, as I noted, the court provided everyone within the courtroom with a 42-inch screen. So the fact that he had a 16-inch screen necessarily— those disparities alone don't necessarily mean that both parties didn't have the same trial. However, the district court didn't even consider providing the same technology or making sure that the technology was equivalent and it was not unfairly burdening one party over the other. Now, you have half a minute left. But what we'll do is give you a minute or two for rebuttal. Wonderful. Thank you. Okay, thank you. Good morning, Ms. Woods. Good morning. May it please the Court, my name is Shalise Woods, and I represent Billy Kelsheimer and Diane Quinonez. I had intended to spend a fair amount of time discussing Issue 1, but I've learned this morning that it seems Mr. Perotti's counsel is conceding Issue 1 in their brief. However, I did hear counsel sort of interweaving some of the stone factors into her argument about Argument 2 of their brief. I would just like to start by saying that the district court judge here did not simply disregard Mr. Perotti's interest in litigating his case. She did not take them lightly. Rather, she properly balanced all of the factors in Stone v. Morris and reached a fair resolution, and he got his day in court, and it was fairly tried. Do you think it would be within a judge's discretion to adopt the approach that Mr. Perotti is suggesting, that if appearing by video is good enough for him, it should be good enough for all parties? I don't, Your Honor. It's not within a judge's discretion? I don't think so because, as Your Honor pointed out, there are constitutional interests implicated for the defendants in this case as well. These defendants were sued in their individual capacity. They were allegedly violating Mr. Perotti's constitutional rights. They very much wanted to be present and present their side of the case to the jury. I am not sure how Judge Magnus Stinson could have barred them from they got themselves to the courthouse, and they wanted to testify, and I'm not really sure under what authority she could have barred them from doing that. Would there have been a request to shackle Mr. Perotti during the trial had the judge ordered him to appear in person? I don't know the answer to that with 100%. His BOP transportation orders showed that he was highly dangerous and to be transported using extreme caution with restraints. Now, had the decision been made to have him present in the courtroom that day, I'm not sure what the answer to that. We never had that conversation that far along with the BOP, but I'm sure that the judge would have taken lengths to ensure that he was not prejudiced in front of the jury. I would also like to say in terms of the judge's options in this case and whether she considered all of these issues, Mr. Perotti himself very much limited the options that were available for the judge to consider. She appointed him counsel, but very close to the counsel who filed the motion for the writ, counsel who represented him at his deposition, who took the defendant's depositions, who served writ and discovery. He fired her very close to trial, so he decided to go it pro se. He also insisted on a jury trial, which is fine. That was his right. He also never offered to post money for his transportation or housing for the trial. He never posted the money and never offered to post the money. Really, the only options he ever- Does the record tell us if that money would have been available to him? He did not have inform-a-papyrus status in the case. He also, as the court pointed out, did not raise this issue of conducting the entire case by video to the district court judge, although I don't think she could have done that anyway. But the point is the only options he presented were let me appear in person and have the government pay for it, and that was it. In terms of waiver, we do think then that he has waived this argument about forcing the defendants to also appear by video. This isn't a case- And there is a little more leniency when we have an inmate pro se litigant. I understand that. But he was represented by counsel. She filed the motion for the writ. She made good arguments to the court on Stone v. Morris. He also filed his own motion, and this is an issue that was simply not raised. So unless the court has any further questions, we will stand by our briefs, and Ms. Kelsheimer and Ms. Quinonez ask that you affirm the district court's decision and the jury trial verdict in their favor. Thank you. Thank you. Ms. Stephens, come. Two minutes. It probably won't be a little bit less than that, actually. We just would like to conclude by stating that Mr. Pardee merely requests that his right to a fair trial be respected in equivalent manners to the defendant's and that he not be unfairly prejudiced by the court-ordered use of video conferencing at his trial when the other party is not affected by these disadvantages, which this court has recognized. The district court could have easily achieved this and avoided all these issues outlined today by simply following the established precedent of Thurner-Snyder and requiring both parties to appear by video conferencing, which is our position that additionally it probably would have been more convenient, given the length and duration of the trial, the number of witnesses, as well as the fact that Mr. Pardee also appeared by video conferencing from a more distant location. But because the district court failed to even consider this or any other suitable arrangement, aside from the one ordered when it made its determination to deny his writ of habeas corpus a testificandum, the district court abused its discretion by requiring video conferencing for his appearance but not the defendant's. On that basis, we respectfully request that Mr. Pardee's appeal for a new trial be granted. And on a final note, while we are not urging this court to overturn Stone v. Morris, we are also requesting that this court simply require district courts in the future to consider requiring defendants to appear at trial in a similar remote manner in cases where the use of video conferencing technology has been ordered for prisoner plaintiffs' participation in a civil trial proceeding. Thank you. Thank you. Now, Ms. Stevens, you were appointed, and you are a law student. Yes, indeed. And you did a terrific job for your client. Thank you. Thank you very much. What year are you in? Last semester, actually, so. The last year. Yeah, home stretch. Isn't that wonderful? Professor Manville, thank you so very, very much. You really have the thanks of the court. And, well, of course, the government always has our thanks. And the case will be taken under advice.